This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**TRUETT L. SCARBOROUGH,**

Plaintiff-Appellee,

v.                                                    **No. A-1-CA-34718**

**ANGEL FIRE RESORT OPERATIONS,**
**LLC, a New Mexico Limited Liability Company,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF COLFAX COUNTY**
**John M. Paternoster, District Judge**

Stephen C.M. Long
Albuquerque, NM

Jeffery L. Thomason
Angel Fire, NM

for Appellee

Rose L. Brand & Associates, P.C.
Karla K. Poe
Albuquerque, NM

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Edward Ricco
Albuquerque, NM

for Appellant

Carol Neelley, P.C.

Carol A. Neelley

Santa Fe, NM

for Amicus Curiae Association of Angel Fire Property Owners

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

**{1}** Defendant has filed a motion for rehearing in this matter, which has been considered by the original panel, and is hereby granted. The opinion filed July 28, 2017, is hereby withdrawn and this opinion is filed in its stead.

**{2}** Defendant Angel Fire Resort Operations, L.L.C. (the Resort), appeals the district court's orders granting summary judgment to Truett L. Scarborough (Plaintiff), and denying summary judgment to the Resort. We affirm in part, reverse in part, and remand for further proceedings.

**BACKGROUND**

**{3}** We are presented with yet another opportunity to review, evaluate, and interpret the bankruptcy-related documents of the Resort and its right to collect annual assessment fees for the maintenance of amenities. *See Home & Land Owners, Inc. v. Angel Fire Resort Operations, L.L.C.* (*HALO*), 2003-NMCA-070, 133 N.M. 733, 69 P.3d 243; *see also Angel Fire Resort Operations, L.L.C. v. Corda*, 2005-NMCA-084, 138 N.M. 50, 116 P.3d 841. The dispute here is between the Resort, located in Colfax County, New Mexico, and Plaintiff, who owns Lots 2, 3, and 4 in the Monte Verde

"V" Subdivision Unit 1 (Monte Verde Subdivision), which is also located in Colfax County. The Resort claims that Plaintiff is required to pay the annual assessment fees. Plaintiff claims that he is not obligated to pay the assessment fees.

{4}    In 1966 the LeBus family owned four ski lifts located at the Angel Fire ski resort at the south end of the Moreno Valley outside of Eagle Nest, New Mexico. *See Riblet Tramway Co. v. Monte Verde Corp.*, 453 F.2d 313, 314-15 (10th Cir. 1972). In addition, Roy LeBus (LeBus) purchased Monte Verde Ranch and was developing the Resort with a plan to include ski areas, a golf course, and other amenities. LeBus was the original developer of the Resort. In 1966 and 1967 Monte Verde Subdivision was platted and dedicated by Roy H. LeBus & Sons, Inc. In 1967 Plaintiff purchased Monte Verde Subdivision Lot 3 from Monte Verde Corporation. The deed to Lot 3 was signed by LeBus and stated that the property was "[s]ubject to easements and restrictions of record."

{5}    The ownership of the assets of the Resort changed over the years. In 1993 the five corporations or partnerships operating or related to the Resort filed for Chapter 11 bankruptcy. A Property Owners' Committee (POC) was appointed and participated in the bankruptcy case on behalf of the property owners in the Resort. In a disclosure statement filed during the bankruptcy proceedings, the POC sought to retain the rights

of property owners to use the Resort's amenities. The POC made a request for a negative easement running with the land in order to preserve those rights.

{6}     The bankruptcy proceedings resulted in a reorganization plan (Plan) containing provisions regarding annual assessment fees to be paid by property owners for use of the Resort's amenities as well as a Supplemental Declaration providing that the assessment fees may be changed over time for new homesites and for existing homesites sold or transferred after September 1996. *See HALO*, 2003-NMCA-070, ¶¶ 4-5. The Plan was confirmed on May 31, 1995. The negative easement was included in the Supplemental Declaration and was recorded on September 27, 1995. "The Plan was accepted by a majority of all classes of claimants required to vote on it, including the property owners." *Id.* ¶ 3. The Plan and the Supplemental Declaration required that the property owner of each homesite pay an annual assessment fee "for the improvement, maintenance, upkeep, repair and operation of and additions to the [a]menities," with payment not being dependent on the owner's use of the amenities. Many years after the Plan was confirmed and the Supplemental Declaration was recorded, Plaintiff purchased Monte Verde Subdivision Lots 2 and 4. Lots 2 and 4, like Lot 3, were originally purchased from Monte Verde Corporation.

{7}     Plaintiff argues that he never agreed that he was subject to the annual assessments and that he has consistently maintained that he does not use and has never

used the amenities. Plaintiff initially attempted to reopen the bankruptcy proceedings to obtain a legal ruling concerning this obligation to pay yearly assessments; however, his attempts were unsuccessful because the bankruptcy estate was closed and the court ruled it had no jurisdiction to revisit the Plan. Plaintiff was directed to state court for any possible relief. *See In re Angel Fire Corp.*, No. 93-12176-3a11, 2013 WL 1856350 (D.N.M. May 2, 2013).

{8} Plaintiff subsequently filed a complaint for declaratory judgment and quiet title asking the district court to find that he and his lots are not liable for membership in the Resort and to quiet title to his property against claims made by the Resort. The Resort filed a counterclaim for money due based on past due assessments connected to Plaintiff's lots. The parties filed cross-motions for summary judgment. On January 16, 2015, the district court denied the Resort's motions for summary judgment as to Lots 2, 3, and 4. On April 2, 2015, the district court granted Plaintiff's motion for summary judgment on all three lots, finding that the exhibits and evidence show that Monte Verde Subdivision "is not part of any of [the Resort's] subdivisions, developments, properties, or ownership interests." Accordingly, the district court found that Plaintiff's lots are not subject to membership fees, and any person to whom Plaintiff conveys or devises his lots will not be subject to membership fees. In a letter decision filed on February 24, 2015, the district court indicated that it had re-examined the

pleadings and exhibits and came to the conclusion that Monte Verde Subdivision, which includes Plaintiff's lots, has no liability to the Resort for membership fees. The district court did not point to any particular pleading or exhibit that led to this comprehensive conclusion. The Resort appealed from the orders denying its summary judgment motion and granting Plaintiff's motion for summary judgment.

**{9}** We note that some of Plaintiff's arguments and the district court's letter ruling refer to the entire Monte Verde "V" Subdivision Unit 1. Plaintiff did not seek certification in order to bring a class action on behalf of the entire subdivision and did not present any proof that he was entitled to represent the interests of all property owners in the subdivision. *See* Rule 1-023(B) NMRA ("An action may be maintained as a class action if the prerequisites of . . . this rule are satisfied[.]"). Therefore, we confine our discussion in this opinion to Monte Verde Subdivision Lots 2, 3, and 4.

**DISCUSSION**

**Summary Judgment**

**{10}** The Resort argues that the district court erred in granting summary judgment to Plaintiff with respect to Monte Verde Subdivision Lots 2, 3, and 4. The Resort contends that the bankruptcy court's Plan and the Supplemental Declaration apply to Plaintiff's Monte Verde Subdivision lots, that Plaintiff's claims regarding the violation of state law and lack of jurisdiction by the bankruptcy court lack merit, and

that Plaintiff's arguments are barred under the doctrine of res judicata. In response, Plaintiff claims that he is not bound by any contract created by the confirmation of the Plan and Supplemental Declaration because he was not a creditor or a property owner in the bankruptcy case, and his lots are, therefore, not affected. In support of this claim, Plaintiff argues that the bankruptcy debtor and its predecessors did not develop the subdivision and that Monte Verde Subdivision is a unique property that was not subject to any recorded or implied covenants. Plaintiff further argues that the language and definitions in the Supplemental Declaration indicate that his lots are not homesites in the subdivision and that he is not a property owner under the Supplemental Declaration. Finally, Plaintiff disputes the Resort's res judicata claims.

{11}     All parties agree that there were no recorded covenants or easements, and no party has produced any written agreement, on Lots 2, 3, and 4 at the time the lots were originally purchased. The question before us is whether Plaintiff, or the previous owners of Lots 2 and 4, entered into implied, but binding, contractual relationships concerning amenities and payment of assessment fees. The parties discuss these relationships in terms of implied negative easements or implied covenants. These types of restrictions on property are contractual in nature. *See Agua Fria Save the Open Space Ass'n v. Rowe*, 2011-NMCA-054, ¶ 19, 149 N.M. 812, 255 P.3d 390 (noting that "the construction of restrictive covenants . . . is governed by fundamental

7

principles of contract law"). Restrictions on property can be indicated on the deed or other instrument, but can also be indicated by the situation and surrounding circumstances showing that the grantor intended to impose certain restrictions. *See Sharts v. Walters*, 1988-NMCA-054, ¶ 11, 107 N.M. 414, 759 P.2d 201 (holding that reciprocal restrictions may be inferred from the particular situation and surrounding circumstances). In addition, covenants can be created or modified by agreement of the property owners. *See* 20 Am. Jur. 2d *Covenants, Conditions, & Restrictions* § 152 (West 2017) (stating that "a covenant may be created by agreement apart from a conveyance, such as in a settlement agreement"). Such an agreement could have occurred prior to the bankruptcy, during the bankruptcy, or after the bankruptcy.

**Standard of Review**

{12}     "We review the district court's decision [on] summary judgment de novo." *Firstenberg v. Monribot*, 2015-NMCA-062, ¶ 13, 350 P.3d 1205. This Court "view[s] the facts in a light most favorable to the party opposing summary judgment and [construes] all reasonable inferences in [favor] of a trial." *Romero v. Philip Morris, Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Where reasonable minds will not differ as to

an issue of material fact, the court may properly grant summary judgment." *Id.* (internal quotation marks and citation omitted).

**Monte Verde Subdivision Lots 2, 3, and 4**

{13}    For clarity, we provide a short summary of the bankruptcy proceedings as they relate to the property owners in the Resort. The reorganization in the bankruptcy court resulted in the Plan, which included property owners in the Resort as creditors to the bankruptcy. "Property Owners" are described as persons owning title to any homesite in or near the Village of Angel Fire, "which property is more particularly described in the Negative Easement," who were entitled to use amenities upon payment of the annual required assessment. The negative easement referred to in the Plan is embodied in the Supplemental Declaration, which resulted from a proceeding in which the POC succeeded in protecting rights concerning the amenities on behalf of the property owners. The Supplemental Declaration provides for covenants running with the land that require the Resort to preserve amenities for use by property owners, and for property owners to pay annual assessments for the maintenance, operation, and improvement of the amenities. The Supplemental Declaration applies to property owners and homesites with homesites described as "any legally constituted lot" that is "within the Subdivisions" listed in Exhibit A. This Supplemental Declaration refers to the arrangements with respect to assessments and use of amenities by property

owners, which "whether or not created by express language in the Restrictive Covenants and HUD Disclosures previously filed, have created certain property interests[,] which run with the land and may be variously described as . . . implied reciprocal negative covenants, implied restrictive easements, equitable servitudes[,] or equitable easements." The purpose of the Supplemental Declaration was "to make the covenants and easements applicable to the Amenities uniform, to restate and clarify the implied covenants and easements, [and set] forth express covenants and easements." Exhibit A, which is attached to and made part of the Supplemental Declaration, lists "Monte Verde 'V' Subdivision Unit 1," and indicates that there were "No Restrictive Covenants Filed." As indicated by the disclosure statement filed by the POC, "[h]olders of Claims relating to the right to use the Amenities of the . . . Resort . . . have had their proofs of claim filed by the Committee."

**Monte Verde Subdivision Lot 3**

{14} Although Plaintiff does not make separate arguments for each of the three lots, we discuss Lot 3 separately from Lots 2 and 4 because Lot 3 was acquired in a different manner and at a different time from Lots 2 and 4. Additionally, the evidence submitted by Plaintiff does not apply to all lots equally. Plaintiff insists that the property included in and affected by the bankruptcy proceedings includes only that which was developed by Angel Fire Corporation, whereas the Monte Verde

10

Subdivision, developed by Monte Verde Corporation, is not affected by the proceedings. Plaintiff points to paragraph 5.1 of the disclosure statement filed in the bankruptcy case and states that LeBus and Monte Verde Corporation are not listed as predecessors in the bankruptcy proceedings. Contrary to Plaintiff's claim, paragraph 5.1 begins, "History of the Debtor Entities: The Angel Fire Resort was originally developed by Le[B]us Development Corporation in approximately 1967." In addition, Monte Verde "V" Subdivision Unit 1 was specifically listed as a subdivision to be included in the bankruptcy proceedings. We note also that, although not dispositive of the issue, one federal case characterized Monte Verde and Angel Fire as joint New Mexico corporations in 1966. *See Riblet*, 453 F.2d at 315. The issue of whether or not the Monte Verde Subdivision, including Lot 3, was part of the Resort, requires further factual development.

{15} Plaintiff states that Monte Verde Subdivision Lot 3 had no recorded covenants when he purchased it and that Exhibit A lists Monte Verde V, Unit 1 as having "No Restrictive Covenants Filed." He points out that when he purchased a separate lot in another subdivision, he was required to agree to assessment fees. Plaintiff claims that the difference in the purchases of the two lots shows that Monte Verde Subdivision is different from subdivisions included in the Resort. We do not agree with Plaintiff's argument. Exhibit A lists a number of other lots, some located in Angel Fire Village,

11

that also had "No Restrictive Covenants Filed." Therefore, the designation of "No Restrictive Covenants Filed" was not unique to Monte Verde Subdivision.

{16}    Plaintiff also states that he was given the option to pay assessment fees to use the amenities but he chose not to do so and has never made an assessment payment since he purchased the lot in 1967. He claims to have successfully challenged any attempt to collect assessments from him over the years. According to Plaintiff, no implied covenants attached to Lot 3, as a result of the option given to him to use the amenities if he paid the assessment fee, because the option was not supported by consideration.

{17}    We conclude that there remain facts to be developed and genuine issues of material fact to be resolved regarding whether there were implied covenants or implied negative easements that were developed and applied to Lot 3 given that: (1) Exhibit A listed a number of lots, other than Lot 3, as having "No Restrictive Covenants Filed"; (2) the Resort repeatedly billed him for past-due assessments; (3) Plaintiff was given an apparently binding option to pay fees in exchange for the use of amenities; and (4) "[p]roperty [o]wners" are described in the bankruptcy documents as owners entitled to use amenities upon payment of the annual required assessment.

{18}    Notably, it appears there was no evidence presented concerning the origins of the alleged implied agreements between the Resort and Plaintiff, or why the Resort

billed Plaintiff for the amenities but never enforced those billings. The record is simply incomplete concerning these questions, and therefore, summary judgment was improperly granted with respect to Lot 3. For the same reasons, the Resort's motion for summary judgment on Lot 3 was properly denied as well.

{19} In reaching this result, we note that Plaintiff relies on a number of items of evidence to show the original intentions of LeBus with regard to the subdivision, the location of the subdivision in relation to Angel Fire Village, and the addresses assigned to Lot 3. Although this is evidence that may favor Plaintiff's position, it does not negate the fact that genuine issues of material fact exist due to the contrary evidence discussed above.

{20} Plaintiff additionally argues that the lots were alienated from the original grantor before the bankruptcy case commenced, and therefore, New Mexico law prohibits placement of covenants on those lots. Plaintiff cites to *In Re Timberon Water Co.*, 1992-NMSC-047, ¶¶ 1, 19, 114 N.M. 154, 836 P.2d 73, that does not involve bankruptcy proceedings but instead involves the state's exercise of its regulatory and police powers when setting rates for utilities under state statute. *Timberon* is not persuasive on the facts of this case. Relying on *Pollock v. Ramirez*, 1994-NMCA-011, ¶ 14, 117 N.M. 187, 870 P.2d 149, Plaintiff argues that a grantor cannot place restrictions on property that the grantor does not own. As we previously discussed,

13

restrictions can be indicated in a deed, implied based on the surrounding circumstances, and created or modified by agreement of the property owners. Because these arguments, made by Plaintiff, are irrelevant to the issues in this case, we do not consider them.

**Monte Verde Subdivision Lots 2 and 4**

{21} Plaintiff purchased Lots 2 and 4 over a decade after the Plan was confirmed and the Supplemental Declaration was recorded. The owners of Lots 2 and 4, at the time of the bankruptcy, were given notice of the proceedings and an opportunity to cast their vote on the reorganization plan. They were provided with voting ballots and deadlines for disputing the Plan, copies of the Plan and the disclosure statement, and final decisions regarding the bankruptcy. Proofs of claim were filed on their behalf. *See In re K.D. Co.*, 254 B.R. 480, 489-90 (B.A.P. 10th Cir. 2000) (discussing requirements for due process in bankruptcy). In addition, the documents sent to the owners included Exhibit A, which specifically listed Monte Verde "V" Subdivision Unit 1 as one of the subdivisions that would be affected. As a result of the Plan and the Supplemental Declaration, the owners of Lots 2 and 4 were provided with a covenant, running with the land and a negative easement, that required the Resort to preserve the amenities and obligated property owners to pay annual assessments. *See*

14

*HALO*, 2003-NMCA-070, ¶ 17 (stating that once confirmed, a reorganization plan is binding on all creditors regardless of whether they agree to the terms).

{22}    In 2007 Plaintiff obtained a quitclaim deed for Monte Verde Subdivision Lot 4, which included a provision that the property was "[s]ubject to easements and restrictions of record." In 2009 Plaintiff secured a special warranty deed for Monte Verde Subdivision Lot 2 "with special warranty covenants," and subject to "[p]atent, reservations, restrictions, and easements of record." Plaintiff purchased Lots 2 and 4 well after the Plan and the Supplemental Declaration were in place, even paying an assessment fee on Lot 2 before he could buy the property.

{23}    In district court, Plaintiff argued that he and the predecessor owners of Lots 2 and 4 did not have any right to use the amenities, had no obligation to pay the assessment fee for use of the amenities, and had no reason to protect a right that they did not possess. However, Plaintiff did not provide any proof, such as affidavits from predecessors in interest, to show whether the previous owners had the right to use the amenities upon payment of assessment fees, whether they were given the same options as Plaintiff, whether they opted out of paying assessments to use the amenities, whether they ever paid any assessments, or whether they joined with other property owners in accepting the terms of the Plan and the Supplemental Declaration. Unlike the situation with Lot 3, there was no evidence presented to show that Lots 2 and 4

15

might not have been subject to the bankruptcy court's powers. Plaintiff presents no evidence that would cause reasonable minds to differ on the issue of whether the lots were covered by the Plan and Supplemental Declaration. We therefore hold that summary judgment should have been granted to the Resort with respect to Lots 2 and 4.

**Issues to be Addressed by the District Court**

{24}    The district court specifically did not address Plaintiff's claims (1) that the Resort waived the right to include Monte Verde Subdivision Lot 3 in the negative easement because there was a "confidential policy" in place that allowed Plaintiff the option to avoid the payment of assessment fees; and (2) that the bankruptcy court lacked jurisdiction to adopt the Plan that imposed covenants on Monte Verde Subdivision Lot 3.[1] In addition, the Resort argues on appeal that Plaintiff's claims are barred based on the doctrine of issue preclusion because they involve claims that could have and should have been litigated in the bankruptcy proceedings. We decline to address these issues without the benefit of a decision from the district court. Therefore, we specifically remand these issues to the district court to address them in the first instance.

---

[1]The Resort claims that Plaintiff abandoned the jurisdictional issue by failing to address it in the answer brief. Since the district court did not address the issue of jurisdiction, we see no reason why Plaintiff should have addressed it.

16

**{25}** Amicus curiae claims that the Resort is a common-interest community. Amicus curiae acknowledges that a common-interest community is usually created by express provision in a declaration or by statute, but suggests that there may be an obligation that is implied in this case. It does not appear that this argument was made below, and we therefore do not address it. *Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 (noting requirements and purpose of preservation and declining to review unpreserved issues). We express no opinion as to whether the district court should address the issue on remand.

**CONCLUSION**

**{26}** We reverse the district court's order granting summary judgment to Plaintiff and affirm the district court's order denying summary judgment, as to Monte Verde Subdivision Lot 3. We reverse the district court's order denying summary judgment to the Resort and reverse the district court's order granting summary judgment to Plaintiff, as to Monte Verde Subdivision Lots 2 and 4. Last, we remand this case to the district court for further proceedings as may be necessary consistent with this opinion.

**{27}** **IT IS SO ORDERED.**

_____

**M. MONICA ZAMORA, Judge**

17

**WE CONCUR:**

_____

**LINDA M. VANZI, Chief Judge**

_____

**JAMES J. WECHSLER, Judge**