362 P.2d 1007

CREE MEADOWS, INC. (NSL), a New Mexico Corporation, Plaintiff-Appellee,

v.

Joe C. PALMER, M. S. Hamilton, George McCarty, and White Mountain Development Company, a partnership, Defendants-Appellants.

No. 6752.

Supreme Court of New Mexico.

June 28, 1961.

480

Schauer & Stiff, Roswell, Sanders & Bivins, Las Cruces, for appellants.

George L. Zimmerman, Alamogordo, Rodey, Dickason, Sloan, Akin & Robb, Joseph J. Mullins, Albuquerque, for appellee.

CARMODY, Justice.

This is a declaratory judgment action, by which the plaintiff (appellee) sought a declaration of extinguishment of certain restrictive covenants. From a decree of the trial court, which, in effect, approved the extinguishment, defendants (appellants) bring this appeal.

The questions involved relate to to the construction of a restrictive covenant agreement dedicating a subdivision, and whether or not any rights are created to other areas owned by the dedicators when a plat of the subdivision is used in making sales of lots.

In 1947, the defendants Palmer, McCarty and Hamilton executed a document known as "Restrictive Covenants of Cree Meadows Country Club Subdivision." The instrument was in four parts, the first entitled "Blanket Restrictions," the second "Residential Area Restrictions"; both of these portions referred only to the areas denominated as Blocks 1 through 11 and Tracts A, B and C. The third was entitled "Restrictions as to Other Areas," and specifically dealt with the portions of the dedicated land denominated "Country Club Tract" and "Cree Meadows Golf Course." Generally, this section provided that the

country club tract should be used as a hotel or clubhouse, and provided for general forms of amusement as might be enjoyed in connection with a clubhouse or hotel. As to the Cree Meadows golf course, it was provided that it "shall be used as a golf course, tennis courts, swimming pools, and other lawful athletic events and activities." The fourth section of the instrument, insofar as is pertinent, provided as follows:

"IV

\*   \*   \*   \*   \*   \*

"(b) All of the covenants herein shall run with the ownership of the above described property and shall be binding on the undersigned parties and all persons claiming under them until December 31, 1995, at which time said covenants shall be automatically extended for periods of ten years unless by vote of a majority in number of the then owners of lots or tracts within the exterior boundaries of the land described in Part I—Blanket Restrictions, hereof, it is agreed to change the said covenants in whole or in part.

"Provided, however, that at any time hereafter any of said covenants or restrictions, in whole or in part, except the Blanket Restrictions in Part I hereof, may be alleviated, amended, released or extinguished as to any block or tract by written instrument duly executed, acknowledged and recorded by three-fourths of the owners of said block or tract voting according to front foot holding, each front foot counting as one vote, and provided further that the undersigned now own land within the aforesaid boundaries or in close proximity thereto, and that these covenants are a general plan for the benefit of any and all of said land, and consequently that if said restrictions are alleviated or released as aforesaid at any time within ten years from the date hereof, and if at such time Joe C. Palmer, M. S. Hamilton, and George W. McCarty, or any of them own any land within the aforesaid boundaries or anywhere within a radius of one mile of said exterior boundary, then in addition to the aforesaid vote of said property owners, it shall also be necessary to obtain the consent thereto of any two of the three undersigned Joe C. Palmer, M. S. Hamilton, and George McCarty, or the consent of such of them as then own the property aforesaid if the same be less than the three of them. For the purposes hereof, any piece of land designated as a tract and lying within the exterior boundaries of a block as shown on the official plat of Country Club Subdivision shall be a part of that block for all voting purposes. \*   \*   \*"

The plaintiff is now the sole owner of "the Country Club Tract" and "Cree Mead-

ows Golf Course." Slightly more than ten years after the original execution of the restrictive covenants, the plaintiff executed a document entitled "Extinguishment of Restrictive Covenants," setting forth therein that the plaintiff owned the entire front footage of both the "Country Club Tract" and the "Cree Meadows Golf Course," and that the restrictions and restrictive covenants for both the tract and the golf course were extinguished except that portion of the golf course representing the present playing area consisting of nine tees, fairways and greens, together with the surrounding area commonly denominated as "rough," comprising approximately 100 acres. The purpose of this purported extinguishment was to remove the restrictive covenants as to the country club tract and the south 76.4 acres of the golf course. This extinguishment was approved by the trial court in its declaratory judgment, entered after trial.

None of the parties to this case are purchasers of any of the lots in the subdivision; and the named individual defendants, or some of them, only own at the present time approximately four of the lots, but have an interest in other undeveloped lands in the vicinity.

The trial court found that the golf course was an open area lying in a valley, and one of the few natural open areas in the vicinity of Ruidoso, New Mexico; that the area is a place of natural beauty and affords a picturesque view to passers-by, those living in the vicinity, and particularly those owning lands abutting said area. The court also found that the defendants had sold lots to purchasers in some of the subdivisions by references to the then-existing plat and the restrictive covenants, and that some persons had purchased lots at higher prices than ordinarily would have been paid after having examined the plat, the covenants, and heard the representations of the owners or their agents. The plat itself is not set out in the findings, although referred to, and this court has examined it. Generally speaking, the plat shows the area surrounding the golf course in the form of an irregular, inverted "V" and as being laid out in subdivisions, tracts, blocks and lots. There are approximately 112 lots in 11 blocks, 4 tracts, and the golf course. The lots and blocks are not of a uniform size or shape, but cover an area somewhat smaller than the approximate 175 acres included in the golf course itself. The focal point of the entire plat is the golf course, showing a general layout of an 18-hole grass green course, to the extent of outlining the location, length and par of each hole. It appears in connection with the evidence offered at the trial that only nine holes of the proposed 18-hole course were ever constructed, and this part of the course is that which is partially abutting and partially adjacent to the subdivided lots, blocks and tracts. It is the portion which was origi-

nally intended to be the other nine holes that the plaintiff now desires to utilize for other purposes, in addition to the "Country Club Tract." None of the blocks or lots of the entire subdivision shown on the plat actually abut on that portion of the proposed golf course in the area of the second nine holes.

Defendants strongly object to certain of the findings made by the trial court and, additionally, to the conclusions drawn from all of the findings. However, in view of our determination, we do not deem it necessary to consider this attack on the findings, inasmuch as, even from the facts as found by the trial court, it is apparent that the court was in error in applying the law to the facts.

■■ It is to be noted that the provision of the restrictive covenants providing for extinguishment repeatedly refers to "block" or "tract," and nowhere is there any provision for extinguishment of the area denominated "golf course." It is quite plain upon an examination of the original restrictive instrument, the plat, and the circumstances as shown at the trial that the intention of the parties was to consider the golf course as something different than a "block" or a "tract." This intention must be considered in the construction of restrictive covenants. Rowe v. May, 1940, 44 N.M. 264, 101 P.2d 391. Although the original ownership of the golf course was in the three subdividers, it strains our credulity to believe that it was intended to have the extinguishment provision as to restrictions apply to this area. To do so would presume bad faith between the dedicators and every person who purchased a lot with reference to the plat. Such bad faith will not be presumed and it does not appear from the evidence. If it had been intended, the instrument would have provided that it applied "to blocks, tracts *or other areas*," not merely to "blocks or tracts." We hold that the extinguishment provision has no application to the "golf course," although it does to the "Country Club Tract."

Therefore, we must then consider the status of the "golf course" area as it concerns the parties to this case, by reason of the original dedication and plat of the area. It could hardly be contended (and it is not) that the streets and alleys as shown on the plat are not available for the use of purchasers in the subdivision. Actually, the streets and alleys were accepted by the county commissioners in their approval of the plat. Even absent this approval, there would be little doubt as to the status of the streets and alleys. See, Nickson v. Garry, 1947, 51 N.M. 100, 179 P.2d 524. There we held that there was an implied covenant of the existence of an alley and that the grantor and his heirs were estopped to deny there was such a street or way. This case also stands for the proposition that the easement, although not the title

484

was reserved for the benefit of adjacent owners and perhaps the public. We recognize that this case was based upon a reservation in a deed, but it points the way for a determination of the instant case. Certainly, ownership of the fee is not incompatible with the easement; and, even though the defendants while they owned the golf course made a charge for the use thereof, this does not mitigate against the right of the defendants and their grantees, who purchased their property in reliance on the existence of the golf course, to have the area preserved as a place of natural beauty and view, in addition to the purposes set forth in the restrictive covenant instrument.

An extensive annotation in 7 A.L.R.2d 607 deals with the problem of the conveyance of a lot with reference to map or plat as giving a purchaser rights in streets, alleys or areas not abutting the roads. The majority rule is that such a purchaser acquires an easement to the use of all the streets and areas delineated in the plat, although there is respectable authority limiting the application of the rule, and some jurisdictions (notably Maryland) restricting the acquisition of such easement or right to abutting streets and those that are necessary to give access to a public highway. However, this rule, when given application to plats showing the existence of parks and other open areas, is even more liberally applied in practically all jurisdictions other than Maryland. See, editorial analysis, 7 A.L.R.2d 610, and cases cited at 650, 651 and 654. We feel that the view enunciated by the courts of last resort in Connecticut (Pierce v. Roberts, 1888, 57 Conn. 31, 17 A. 275), Georgia (Caffey v. Parris, 1938, 186 Ga. 303, 197 S.E. 898), Michigan (Schurtz v. Wescott, 1938, 286 Mich. 691, 282 N.W. 870), New Jersey (Bridgewater v. Ocean City R. Co., 1901, 62 N.J.Eq. 276, 49 A. 801; affirmed without opinion 1902, 63 N.J.Eq. 798, 52 A. 1130), and Texas (Griffith v. Allison, 1936, 128 Tex. 86, 96 S.W.2d 74) is the proper approach. See, also, Cassell v. Reeves, Ky. 1954, 265 S.W.2d 801; Gaither v. Albemarle Hospital, 1952, 235 N.C. 431, 70 S.E.2d 680; Incorporated Town of Mountain View v. Lackey, 1955, 225 Ark. 1, 278 S.W.2d 653; McCorquodale v. Keyton, Fla.1953, 63 So. 2d 906; Wilson v. Dunlap, Fla.1958, 101 So.2d 801; 7 Thompson on Real Property, perm. ed., at 67, § 3582; and 4 Tiffany, Real Property, 3d ed., at 344, § 1103. The proper rule is that, entirely independent of any public right that may exist by reason of a dedication, private rights to the use of a park are created by implied grant, implied covenant, or estoppel. It makes very little difference upon which of the above three theories the holding is based. It is obvious from the record in this cause that the Cree Meadows golf course is a place equivalent to a park or other open area, and the right to have the same con-

tinue in existence as it was at the time of dedication and after sales were made is a valuable one and must be protected by the courts. It is obvious that the golf course as shown by the plat was an essentially constituent and integral part of the larger enterprise, namely, the subdivision itself.

Although it is contended by defendants that there was some type of dedication, either common law or otherwise, of the golf course, we do not deem it necessary to so decide. The fee of the golf course area is owned by the plaintiff, but plaintiff's use thereof must be subordinated to the extent of the easement in favor of the owners of any of the property in the subdivision. The issue of the right of the public to use the area is not before us and we express no opinion.

Issue is also raised by reason of the fact that the deed to the plaintiff makes reference to the restrictive covenants. However, in view of our construction of the covenants themselves and the effect of the use of the plat, we do not deem it necessary to dispose of this issue. The burden and the benefits run with the land in favor of subsequent grantees in the subdivision, and the inclusion of the reference in the deed to the plaintiff neither adds to nor detracts from the legal effect of the original dedication. See, Rowe v. May,

supra; and compare, Suttle v. Bailey, 1961, 68 N.M. 283, 361 P.2d 325.

We recognize the rule that restrictive covenants must be strictly construed against the grantor. See, Rowe v. May, supra, and Hoover v. Waggoman, 1948, 52 N.M. 371, 199 P.2d 991. But in Rowe v. May, supra, we said [44 N.M. 264, 101 P.2d 394]:

"It may be shown from the terms of the instrument as well as from the situation and surrounding circumstances that benefits were intended to attach to other parcels of land of other grantees. (Citation.)"

See, also, H. J. Griffith Realty Co. v. Hobbs Houses, Inc., 1960, 68 N.M. 25, 357 P.2d 677.

There would appear to be no doubt, when we consider the terms of the instrument together with the situation as illustrated by the plat and the surrounding circumstances, that it was intended that the benefits of having the golf course area utilized for the purposes originally specified would attach to the other lands in the subdivision. Plaintiff's proposed extinguishment, or partial amendment, would only be opening the door for such further reduction in the size of the area as originally shown, so that, in theory at least, there might only eventually become a "midget" golf course, or none at all, and the open area develop into

a vista of roofs, chimneys and television aerials.

From what has been said, the cause will be reversed and remanded to the trial court, with direction to set aside its conclusions of law and judgment flowing therefrom, and enter conclusions of law and such judgment as may be necessary in conformity with this opinion, including the granting of such further relief as may be necessary to preserve the golf course area as originally intended.

It is so ordered.

CHAVEZ and MOISE, JJ., concur.

COMPTON, C. J., and NOBLE, J., not participating.