**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2011-NMCA-054

Filing Date:  April 8, 2011

Docket No. 29,402

AGUA FRIA SAVE THE OPEN
SPACE ASSOCIATION, an
unincorporated association,

       **Plaintiff-Appellant,**

v.

JAMES C. ROWE,

       **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Jerry H. Ritter, Jr., District Judge**

Alex Chisholm
Albuquerque, NM

for Appellant

Adam D. Rafkin, P.C.
Adam D. Rafkin
Ruidoso, NM

for Appellee

**OPINION**

**VIGIL, Judge.**

**{1}**    Agua Fria Save the Open Space Association (Plaintiff) filed an action for injunctive relief seeking to prevent James Rowe (Defendant) from developing residential townhomes in an area of open space known as the Country Club Tract.  The district court granted partial summary judgment in favor of Defendant, concluding that Defendant successfully had extinguished the restrictive covenants on the property.  Plaintiff appeals, claiming that (1) Defendant is barred from developing the Country Club Tract, pursuant to *Ute Park Summer*

1

*Homes Association v. Maxwell Land Grant Co.*, 77 N.M. 730, 427 P.2d 249 (1967); *Cree Meadows, Inc. (NSL) v. Palmer*, 68 N.M. 479, 362 P.2d 1007 (1961); and *Knight v. City of Albuquerque*, 110 N.M. 265, 794 P.2d 739 (Ct. App. 1990), and (2) the Saving Clause, which provides for the extinguishment of the restrictive covenants on any block or tract within the Agua Fria Subdivision, does not apply to the Country Club Tract. We conclude that genuine issues of material fact exist regarding Defendant's authority to extinguish the restrictive covenants on the Country Club Tract. Accordingly, we reverse the judgment of the district court and remand for further proceedings.

## I.     BACKGROUND

{2}     The Country Club Tract is composed of 7.23 acres of open space located in the Agua Fria Subdivision in Lincoln County, New Mexico. The Agua Fria Subdivision is subject to a plat and restrictive covenants recorded with the Lincoln County Clerk by the original developers, Bruce and Georgia Griffith, on July 7, 1954.

{3}     Section 3(B) of the restrictive covenants provides as follows:

> The Country Club Tract may be used for a hotel and/or club house and commercial activities for profit, which generally accompany such establishments, such as restaurants, bars, rooms and halls for dancing, tennis courts, swimming pools, fishing, boating[,] and other athletic events and activities operated in connection with such hotel or club house only.

{4}     Section 4(b) of the Saving Clause states:

> All of the covenants [herein] shall run with the ownership of the above described property and shall be binding on the undersigned parties and all persons claiming under them until December 31, 1995, at which time said covenants shall be automatically extended for periods of ten years unless by vote of a majority in number of the then owners of lots and tracts within the exterior boundaries of the land described in Section 1-Blanket Restrictions, hereof, it is agreed to change the said covenants in whole or in part.
>
> Provided, however, that at any time hereafter any of said covenants or restrictions, in whole or in part, except the Blanket Restrictions in Section 1 hereof, may be alleviated, [amended], released or extinguished as to any block or tract by written instrument duly executed, acknowledged and recorded by three-fourths of the owners of said block or tract voting according to front foot holding, each front foot counting as one vote, and provided further that the undersigned now own land within the aforesaid boundaries or in close proximity thereto, and that these covenants are a general plan for the benefit of all and any of said land, and consequently that if said restrictions are alleviated or released as aforesaid at any time within

2

ten years from the date hereof, and if at such time Bruce Griffith and Georgia . . . Griffith, or either of them, own any land within the aforesaid boundaries, then in addition to the aforesaid vote of property owners, it shall also be necessary to obtain the consent thereto of the undersigned.

**{5}** Sue Davis, the daughter of Bruce and Georgia Griffith, inherited the Country Club Tract and transferred ownership to the V.R. Davis and Sue G. Davis Trust (the Trust). On November 30, 2004, the Trust granted Defendant the exclusive option to purchase and develop into townhomes "any or all of the 54 lots" situated on the Country Club Tract. Defendant exercised the option and proposed to build a fifty-two lot development entitled "Escondido Hills, A Subdivision of the Country Club Tract, Agua Fria Subdivision[.]"

**{6}** Plaintiff, an unincorporated association of homeowners in the Agua Fria Subdivision, filed a complaint in district court seeking to enforce the restrictive covenants and enjoin Defendant from developing the Country Club Tract. Defendant moved for summary judgment, arguing that "[n]othing in the Restrictive Covenants prohibits the building of single family residences in the Country Club [T]ract." The district court denied the motion because "genuine issue[s] of material facts exist[ed]."

**{7}** On February 21, 2006, Defendant exercised his right under the Saving Clause to extinguish, alleviate, and release all restrictive covenants, except for the Blanket Restrictions, on the Country Club Tract. Approximately one month later, Plaintiff filed an "Amendment to Restrictive Covenants," which was adopted by a majority of the homeowners in the Agua Fria Subdivision. The amendment provided that "[t]he Country Club Tract shall remain permanently undeveloped and an open space park, as it has for the last . . . 51 years, for the benefit of Agua Fria owners."

**{8}** Thereafter, Defendant moved for reconsideration of his motion for summary judgment based on new circumstances, namely, the extinguishment of the restrictive covenants. The district court granted Defendant's motion "to the extent that the Restrictive Covenants have been properly extinguished by Defendant as to the Country Club Tract." Thus, Plaintiff was "foreclosed from relying on the Restrictive Covenants, other than [the Blanket Restrictions] at the trial." However, the district court allowed Plaintiff to present evidence of the "oral misrepresentations allegedly made by the developer to support its argument that the Country Club Tract was meant to remain an 'open space.'"

**{9}** The issue of whether the homeowners in the Agua Fria Subdivision had been induced to purchase their lots based on the developer's representations that the Country Club Tract "would always remain open space" was tried to the jury. The jury found in favor of Defendant and the district court rendered judgment accordingly. On appeal, Plaintiff does not challenge the jury verdict but, rather, argues that the district court improperly held as a matter of law that Defendant had extinguished the restrictive covenants on the Country Club Tract.

3

## II.    DISCUSSION

**{10}**    "When reviewing a trial court's grant of summary judgment, we view the facts in the light most favorable to the party opposing summary judgment, drawing all inferences in favor of that party." *Gormley v. Coca-Cola Enters.*, 2005-NMSC-003, ¶ 8, 137 N.M. 192, 109 P.3d 280 (internal quotation marks and citation omitted). "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Romero v. Philip Morris, Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280 (internal quotation marks and citation omitted). "We review these legal questions de novo." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582.

### A.    Whether the Homeowners Acquired an Easement to the Open Space in the Country Club Tract

**{11}**    Plaintiff claims that Defendant is barred from developing the Country Club Tract, pursuant to *Ute Park*, *Cree Meadows*, and *Knight*, which hold that "a developer [is not] allowed to induce purchasers to buy property by purporting to include open space such as parks or golf courses in a subdivision plat, only to subsequently change the uses of those open space areas." *Knight*, 110 N.M. at 266, 794 P.2d at 740. Defendant responds that there is "*no . . .* evidence in the case at bar" to establish that "the Country Club [T]ract was intended to always remain an 'open space.'"

**{12}**    "[W]here land is sold with reference to a map or plat showing a park or like open area, the purchaser acquires a private right, generally referred to as an easement, that such area shall be used in the manner designated." *Ute Park*, 77 N.M. at 735, 427 P.2d at 253; *see Cree Meadows*, 68 N.M. at 482, 362 P.2d at 1009 (holding that open space could not be developed where the trial court found that "the defendants had sold lots to purchasers in some of the subdivisions by references to the then-existing plat and the restrictive covenants and that some persons had purchased lots at higher prices than ordinarily would have been paid after having examined the plat, the covenants, and heard the representations of the owners or their agents").

> The rationale of the rule is that a grantor, who induces purchasers, by use of a plat, to believe that streets, squares, courts, parks, or other open areas shown on the plat will be kept open for their use and benefit, and the purchasers have acted upon such inducement, is required by common honesty to do that which he represented he would do. It is the use made of the plat in inducing the purchasers, which gives rise to the legally enforceable right in the individual purchasers, and such is not dependent upon a dedication to public use, or upon the filing or recording of the plat.

*Ute Park*, 77 N.M. at 735, 427 P.2d at 253. "The private rights created when buyers purchased their lots with reference to the plat are superior to the developer's attempt to

4

reserve the power to alter the use of the areas delineated on the plat" as open space. *Knight*, 110 N.M. at 266, 794 P.2d at 740 (affirming summary judgment where it was undisputed that the original developers had used an area of open space as a selling tool to induce purchasers to buy land).

{13}     The factual issue of whether the original developer, Bruce and Georgia Griffith, had induced homeowners to purchase lots in the Agua Fria Subdivision based on the representation of open space in the Country Club Tract was tried to the jury. The jury found, by special interrogatory, that the original developer "of the Agua Fria Subdivision [had not] represent[ed] to one or more of [the] buyers of lots in the subdivision that the Country Club Tract would remain an open space for the use of all of the owners of lots in the subdivision." In the absence of such a representation, the homeowners in the subdivision did not acquire an implied grant, covenant, or easement to the Country Club Tract enforceable against Defendant. Accordingly, Plaintiff's reliance on *Ute Park, Cree Meadows*, and *Knight* is misplaced.

## B.     Whether Defendant Extinguished the Restrictive Covenants

{14}     We next address whether Defendant successfully extinguished the restrictive covenants on the Country Club Tract. Plaintiff claims that the extinguishment provision in the Saving Clause plainly and unambiguously does not apply to the Country Club Tract. Defendant responds that the Saving Clause explicitly provides for the extinguishment of the restrictive covenants on all blocks or tracts within the Agua Fria Subdivision, including the Country Club Tract.

{15}     Whether the language of a restrictive covenant is ambiguous is a question of law. *Jones v. Schoellkopf*, 2005-NMCA-124, ¶ 8, 138 N.M. 477, 122 P.3d 844. The bare fact that two parties argue for different interpretations of a provision "does not create ambiguity . . . instead ambiguity is only created when provisions are reasonably and fairly susceptible to two constructions." *Id.* ¶ 12.

{16}     "Restrictive covenants must be considered reasonably, though strictly, and an illogical, unnatural, or strained construction must be avoided." *Montoya v. Barreras*, 81 N.M. 749, 750, 473 P.2d 363, 364 (1970). "[W]e will not read restrictions on the use and enjoyment of the land into the covenant by implication" and "we must give words in the restrictive covenant their ordinary and intended meaning." *Hill v. Cmty. of Damien of Molokai*, 1996-NMSC-008, ¶ 6, 121 N.M. 353, 911 P.2d 861. "In construing a protective covenant, a court is to give effect to the intention of the parties as shown by the language of the whole instrument, considered with the circumstances surrounding the transaction, and the object of the parties in making the restrictions." *Hines Corp. v. City of Albuquerque*, 95 N.M. 311, 313, 621 P.2d 1116, 1118 (1980).

{17}     The Saving Clause provides, in relevant part, that "three fourths of the owners" of "said block or tract" may alleviate, amend, release, or extinguish any of the restrictive

covenants, except the Blanket Restrictions, by "voting according to front foot holding, each front foot counting as one vote[.]" The Country Club Tract plainly is a "block or tract" of land in the Agua Fria Subdivision and, therefore, it appears that the restrictive covenants are subject to extinguishment. *See Cree Meadows*, 68 N.M. at 483, 362 P.2d at 1010 (construing similar language and holding that "the extinguishment provision has no application to the 'golf course,' although it does to the 'Country Club Tract'"). At the same time, however, the plain language of the Saving Clause seems to contemplate a subdivided block or tract, one with multiple separate lot owners each voting according to front foot holding. Because the Country Club Tract was not subdivided at the time the restrictive covenants were recorded, nor subject to multiple separate ownership, the applicability of this provision is thrown into doubt. Under these circumstances, we conclude that the Saving Clause is ambiguous as applied to the Country Club Tract.

{18} In light of this ambiguity, we must determine whether partial summary judgment was properly granted. The Supreme Court has held that ambiguous or unclear language in a restrictive covenant must be resolved "in favor of the free enjoyment of the property and against restrictions." *Hill*, 1996-NMSC-008, ¶ 6 (holding that "[t]his rule of construction . . . militates in favor of a conclusion that the term 'family' encompasses a broader group than just related individuals and against restricting the use of the property solely to a traditional nuclear family"). *Id.* ¶ 13. Pursuant to this line of authority, it appears that the district court properly construed the Saving Clause in favor of Defendant as a matter of law. At the same time, however, the Supreme Court has instructed that the rule of strict construction must be subordinate to the intention of the parties as reflected by the language of the whole instrument, the circumstances surrounding the transaction, and the purposes animating the restrictions. *Montoya*, 81 N.M. at 751, 473 P.2d at 365 (holding that, although the restrictive covenants "may be changed in whole or in part, the change or changes which might be made must affect all of the described property" given the drafter's plain intent to provide for "a detailed plan for residential development"); *see Sharts v. Walters*, 107 N.M. 414, 419-20, 759 P.2d 201, 205-06 (Ct. App. 1988) ("Although we recognize the general rule that ambiguities concerning restrictive covenants should be resolved in favor of the free enjoyment of the property and against restrictions, this rule cannot be applied to defeat the obvious purpose of the restrictions. The intent of the parties and object of the restrictions govern.") (citations omitted). Pursuant to this line of authority, it appears that summary judgment was improper because genuine issues of material fact existed regarding the drafter's intent vis-á-vis the Country Club Tract. To resolve the issue on appeal, we must reconcile these two conflicting lines of authority.

{19} Restrictive covenants "constitute a contract between the subdivision's property owners as a whole and the individual lot owners," based on the consideration "given and relied upon in the conveyance of land." *Aragon v. Brown*, 2003-NMCA-126, ¶ 11, 134 N.M. 459, 78 P.3d 913 (alteration omitted) (internal quotation marks and citations omitted). Although created by contract, restrictive covenants constitute valuable "property rights which run with the land." *Montoya*, 81 N.M. at 751, 473 P.2d at 365; *see Leigh v. Vill. of Los Lunas*, 2005-NMCA-025, ¶ 11, 137 N.M. 119, 108 P.3d 525 ("[R]estrictive covenants

are deemed property interests in New Mexico."). Historically, "restrictive covenants have been used to assure uniformity of development and use of a residential area to give the owners of lots within such an area some degree of environmental stability." *Montoya*, 81 N.M. at 751, 473 P.2d at 365. Given their "contractual . . . nature[,]" *Aragon*, 2003-NMCA-126, ¶ 11, however, the construction of restrictive covenants is governed by principles of contract law. *See Heltman v. Catanach*, 2010-NMCA-016, ¶ 6, 148 N.M. 67, 229 P.3d 1239 (holding that the termination of a restrictive covenant "by release or agreement is based on fundamental principles of contract law" (internal quotation marks and citation omitted)), *cert. denied*, 2010-NMCERT-001, 147 N.M. 673, 227 P.3d 1055; *cf. City of Rio Rancho v. AMREP Sw., Inc.*, 2010-NMCA-075, ¶¶ 17-18, 148 N.M. 542, 238 P.3d 911 (applying contract law to the construction of a deed and plat), *cert. granted*, 2010-NMCERT-008, 148 N.M. 943, 242 P.3d 1289.

**{20}** In *C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 817 P.2d 238 (1991), our Supreme Court rejected the "'plain-meaning' or 'four-corners' standard [of contract interpretation], under which ambiguity is determined by the court without consideration of any evidence outside the contract itself to explain the purposes or context of the contract[.]" *Mark V, Inc. v. Mellekas*, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993). In doing so, the Court relied on "the difficulty of ascribing meaning and content to terms and expressions in the absence of contextual understanding[.]" *C.R. Anthony*, 112 N.M. at 508, 817 P.2d at 242. Thus, "in determining whether a term or expression to which the parties have agreed is unclear, a court may hear evidence of the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and course of performance." *Id.* at 508-09, 817 P.2d at 242-43 (footnote omitted).

> [I]f the court finds ambiguity, the jury (or the court as the fact finder in the absence of a jury) resolves the ambiguity as an issue of ultimate fact before deciding issues of breach and damages. The question of interpretation of language and conduct (the question of the meaning to be given the words of the contract) is a question of fact where that meaning depends on reasonable but conflicting inferences to be drawn from events occurring or circumstances existing before, during, or after negotiation of the contract.

*Id.* at 509, 817 P.2d 243 (citation omitted).

**{21}** Contextual understanding is necessary to construe restrictive covenants in a manner consistent with the intent and expectation of the parties. Thus, extrinsic evidence is admissible to explain or clarify, but not to vary or contradict, a restrictive covenant's terms. *Id.* (concluding that the parol evidence rule does "not bar introduction of evidence to explain terms"). "To hold otherwise would be to relegate to judicial divination the determinative issues of many . . . disputes." *Id.* at 510, 817 P.2d at 244. Pursuant to *C.R. Anthony* and its progeny, we conclude that the courts are not obligated to apply the rule of strict construction in determining whether the language of a restrictive covenant is ambiguous, or in resolving a factual dispute regarding the restrictive covenant's meaning.

7

**{22}** We recognize that this Court previously has held that "[t]he secret, unexpressed intentions of the developer are not admissible to interpret the meaning of a covenant running with the land" and that "[t]he developer's testimony may not be used to decide what is essentially a threshold question—is the covenant, as it reads, ambiguous?" *Wilcox v. Timberon Protective Ass'n*, 111 N.M. 478, 484, 806 P.2d 1068, 1074 (Ct. App. 1990); *see Aragon*, 2003-NMCA-126, ¶ 14. However, our statement in *Wilcox* pre-dated the Supreme Court's opinion in *C.R. Anthony*, which, as previously explained, explicitly overruled the "plain-meaning" or "four-corners" standard of contract interpretation. *C.R. Anthony*, 112 N.M. at 508, 817 P.2d at 242 (internal quotation marks omitted). Accordingly, we do not follow *Wilcox* in this case.

**{23}** Our holding is consistent with the Restatement (Third) of Property: Servitudes § 4.1 (2000), which instructs that "[a] servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding the creation of the servitude, and to carry out the purpose for which it was created." The Restatement "departs from the often expressed view that servitudes should be narrowly construed to favor the free use of land" in recognition of the fact that "servitudes are widely used in modern land development and ordinarily play a valuable role in utilization of land resources." Restatement (Third) of Property: Servitudes § 4.1 cmt. a; *see Jones*, 2005-NMCA-124, ¶ 9 (recognizing that restrictive covenants "have allowed the creation of stable arrangements of land use" (internal quotation marks and citation omitted)).

**{24}** A majority of our sister states similarly have rejected the rule of strict construction, reasoning "that private land use restrictions have been particularly important in the twentieth century when the value of property often depends in large measure upon maintaining the character of the neighborhood in which it is situated." *Joslin v. Pine River Dev. Corp.*, 367 A.2d 599, 601 (N.H. 1976) (internal quotation marks and citation omitted). The majority rule recognizes that the intent of the parties, rather than the free use of land, "is the cardinal principle in interpreting restrictive covenants." *Powell v. Washburn*, 125 P.3d 373, 377 (Ariz. 2006) (en banc) (internal quotation marks and citation omitted); *see Highbaugh Enters. Inc. v. Deatrick & James Const. Co.*, 554 S.W.2d 878, 879 (Ky. Ct. App. 1977) (holding that restrictive covenants "are to be regarded more as a protection to the property owner and the public rather than as a restriction on the use of property, and that the old-time doctrine of strict construction no longer applies"); *Markey v. Wolf*, 607 A.2d 82, 88-93 (Md. Ct. Spec. App. 1992) (explaining that Maryland, as well as other states, have rejected the rule of strict construction in favor of a "reasonableness rule" that focuses on the intent of the parties) (internal quotation marks omitted); *Riss v. Angel*, 934 P.2d 669, 676 (Wash. 1997) (en banc) (holding that "in Washington[,] the intent, or purpose, of the covenants, rather than free use of the land, is the paramount consideration in construing restrictive covenants"). Likewise, we conclude that the intent of the parties controls the interpretation of restrictive covenants under New Mexico law.

**{25}** Applying the foregoing principles to the facts of this case, we conclude that genuine issues of material fact exist regarding the applicability of the extinguishment provision to

8

the Country Club Tract and, therefore, summary judgment was improper. On remand, Plaintiff may present extrinsic evidence, if any such evidence exists, regarding the circumstances surrounding the adoption of the extinguishment provision and Bruce and Georgia Griffith's purpose and intent with respect to the Country Club Tract. We emphasize that the trier of fact must construe the intended meaning of the extinguishment provision at the time of its adoption. *See C.R. Anthony*, 112 N.M. at 509, 817 P.2d at 243 ("It is important to bear in mind that the meaning the court seeks to determine is the meaning one party (or both parties, as the circumstances may require) attached to a particular term or expression at the time the parties agreed to those provisions."). Accordingly, Bruce and Georgia Griffith's subsequent oral representations to the homeowners in the Agua Fria Subdivision only are admissible, if at all, to the extent that they clarify the intended meaning of the extinguishment provision, as applied to the Country Club Tract, on July 7, 1954.

### C. Whether Plaintiff's Amendment to the Restrictive Covenants is Valid

**{26}** In its request for relief, Plaintiff asks this Court to recognize the validity of its amendment to the restrictive covenants, which provides that the "[t]he Country Club Tract shall remain permanently undeveloped and an open space park, as it has for the last . . . 51 years, for the benefit of Agua Fria owners." Defendant responds that Plaintiff's amendment is invalid because "a majority of property owners cannot amend the restrictive covenants to impose new burdens on only one select property."

**{27}** "To preserve a question for review[,] it must appear that a ruling or decision by the district court was fairly invoked[.]" Rule 12-216(A) NMRA; *see Chrysler Credit Corp. v. Beagles Chrysler-Plymouth*, 83 N.M. 272, 273, 491 P.2d 160, 161 (1971) (holding that a "matter not brought to the attention of the trial court cannot be raised for the first time on appeal"). Plaintiff did not ask the district court to rule on the validity of its amendment to the restrictive covenants. The issue, therefore, is not preserved for appellate review, and we decline to address it. *Andalucia Dev. Corp. v. City of Albuquerque*, 2010-NMCA-052, ¶ 25, 148 N.M. 277, 234 P.3d 929 ("Appellate courts will not consider issues that went unpreserved at the district court level."). Our holding, however, does not preclude Plaintiff from raising this issue on remand.

### III. CONCLUSION

**{28}** The district court improperly granted partial summary judgment in favor of Defendant because genuine issues of material fact exist with respect to whether the extinguishment provision of the Saving Clause was intended to apply to the Country Club Tract. Accordingly, we reverse the judgment of the district court and remand for further proceedings.

**{29} IT IS SO ORDERED.**

_____

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**TIMOTHY L. GARCIA, Judge**

**Topic Index for *Agua Fria Save the Open Space Ass'n v. Rowe*, Docket No. 29,402**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-RM | Remand |
| AE-SR | Standard of Review |
| | |
| **PR** | **PROPERTY** |
| PR-ES | Easement |
| PR-RC | Restrictive Covenant |